May it please the court. My name is Derek Broughton along with my co-counsel J.J. England. We represent Casey and Julie Voigt. Casey and Julie are cattle ranchers from rural North Dakota and the Coyote Creek Mine sits atop their land on their ranch. And they've brought this action because of concerns over air emissions from the coal preparation plant that is near their their home. So there are two primary claims in the case. I want to talk about how some of the factual issues for those claims overlap and a key distinction about them. The claims are that the coal prep plant that we see in these pictures is exceeds the major source threshold 250 tons per year of particulate matter. Therefore being subject to a major source error permit. The other claim is that... There's a genuine issue of material fact as to whether it exceeds 250. That's correct, your honor. There's disagreement from the experts, but whether or not as a practical matter it will exceed that is probably going to be dependent on whether or not the coal pile is in or out. The second claim and the question is whether or not the coal pile is an affected facility under NSPS subpart Y and  if the court determines that the coal pile is an affected facility under NSPS subpart Y then you definitely count the emissions from the coal pile towards that major source emission threshold. Critically, however, if the court does not determine or determines that the coal pile is not an affected facility that does not determine whether or not you count the emissions from the coal pile for purposes of whether or not the facility exceeds the major source threshold. And so it's a critical distinction, and I think the mistaken assumption that whether or not it's an affected facility also determines the other issue is a source of obfuscation with some of the overlapping facts in the case. Specifically... I don't understand that alternative. What's the theory? That this is that the road is so short that the mine and the pile is all part of the mine. How do you get everything in that you want in if subpart Y doesn't apply? I appreciate the question, Judge Loken. And it's because whether or not something is an affected facility determines whether or not it is subject to one of the specific performance standards in NSPS subpart Y. The performance standard for open storage coal piles is the submission of a fugitive dust control plan in compliance with subpart Y. Now, whether or not you need a major source PSD permit is a separate question under a separate program. And as I said, obviously, if something is an affected source within that, it must be in the Coal Prep and Processing Plant. If you look at the 1998 guidance that we've cited to from EPA, it's a different issue, different source. But what they do refer to in there is the fact that there are two questions here. In that guidance, they're talking about whether or not coal unloading is part of coal conveying equipment. Did the district court consider all this in its massive opinion? Did it consider each of these arguments? What you're doing is confusing me this morning. If you want to say that there's an issue the district court completely failed to address, maybe I can understand that. Sure, Your Honor. If it's addressed, then I've read the opinion and followed the analysis. The issue that the district court failed to address, number one, it's a question of in what order it did so. But the first issue that the district court did not squarely address that it needed to is simply the question of, is there ambiguity in these regulations? And the problem is that the district... Wait, wait. The court spent pages on that. Respectfully, Your Honor, I think that the court spent pages discussing the interpretation of conflicting secondary guidance and how that guidance seems to conflict with itself. There is the 1998 guidance from EPA on coal unloading. There's the 2009 response to comments. The district court looked at these and said, well, there are some conflicting statements in here, and it's hard to square those. You don't get to those unless you first look at the regulations. You need to start with the regulations, make a determination of whether the plain language... I've never seen an EPA reg that wasn't ambiguous. Well, Your Honor... I've seen them for a long time. Well, Your Honor, the Third Circuit in the Starr Enterprises case agreed with us that there wasn't ambiguity with respect to an almost identical regulation. And what I would discern the difference between is whether the regulation itself is ambiguous, which the district court didn't start with an analysis there. It started at the back end of the analysis with the guidance. And by looking at the guidance and determining that the guidance documents had conflicting statements, arrived at the conclusion that the regulation must be ambiguous. So tell me why you think it's not ambiguous. Because I think that if you look at the regulations themselves and simply apply the facts, apply those regulations to the facts in this case, you don't need to get further than that analysis. And so the regulations say provisions of this subpart, this subpart Y, apply to affected facilities and coal preparation and processing plants. Those performance standards in subpart Y are applicable to any of the following affected facilities. Two of the primary affected facilities are coal processing and conveying equipment and open storage piles. I submit that we can just look at this picture and make our determination. And it is quite frankly that simple. What are the affected facilities we're looking at? We are looking at coal processing and conveying equipment. What you can't see here is the feeder breaker structure that protrudes into the coal pile. There is a coal pile, a listed affected facility. There are the breaker crushers and then the conveyor going up to the station. Now factually speaking, is there any dispute between the parties that the apron feeder juts in, exactly what you're saying, juts into the coal pile and that the coal pile itself surrounds the apron feeder? There is no factual dispute as to whether or not the apron feeder juts into the coal pile. There was a factual dispute with respect to whether during regular operations the coal, the opening at the top of the apron feeder is open to the air and whether coal is pushed down so that it falls into the apron feeder versus the coal completely covering that apron feeder and coal just being fed into it while it is completely covered. And sometimes it doesn't. My understanding of the operation of this is that sometimes it doesn't completely cover it because the apron feeder has already pulled a lot of the coal in and the bulldozers have to move more coal into the apron feeder. Is that correct? That's correct, Your Honor. The evidence that we have in the record shows and the testimony from the mine shows that there are times when according to them, it is completely covered. They've also conceded there are times when it's not covered. But what is not disputed is the fact that that apron feeder juts out into the coal pile. And so your argument then is that the apron feeder, because it's undisputed or is it disputed that the apron feeder is part of the coal processing plant, the fact that it's surrounded by the coal pile, makes it so the coal pile is in the coal processing plant? Is that your theory? I think that that is logical. I think that is the case. I don't think you even need to get to that level of detail. I think just the fact that you've got this facility where it is, but it is not disputed that the apron feeder is out there. Initially, what the mine had claimed is that it was not the apron feeder, but the crushers at the end of the conveyor on the apron feeder that started the coal prep and processing plant. Over the course of the litigation, I believe they've conceded that the apron feeder itself, one of their experts, conceded that it's found the drop into the feeder. And so that's been something that's been a bit of a moving point. The apron feeder is in the coal processing plant. That's agreed upon. Okay. Yes. So is the court wrong to say that two-thirds or so of the total coal in the pile is not used in daily operations, and therefore, it's a storage pile? The court is not wrong to say that two-thirds of the pile is not used in daily operations. Two-thirds of the pile is required to get up to the level of the apron feeder so that you can even get coal into it functionally. You couldn't get... If you're going to have a storage pile, and you're going to take from the pile that's put into the apron feeder, then the apron feeder is going to be designed to take account of the size of the pile. You're sort of reversing the logic. Okay, Your Honor. Regardless of that, the question as posed in the Star Enterprises case, as the way they construe the topic, is not whether or not it is functionally necessary to have a pile there. The question is simply, is this pile in the coal preparation plant? What I would say is that the one of the definitions is for coal processing and conveying equipment. I think that that definition is redundant if the facility is a coal preparation plant. What we need to look at is just how our facility is defined in the Clean Air Act, and what is the logical way to apply the regulation. We have coal preparation plants. We have affected facilities, one of which is a coal pile. They have coal piles as affected facilities because they recognize that coal preparation plants usually have coal piles at them. And so we have a facility. This facility is graded on a common pad, constructed on that pad. You see the haul road coming up to the facility. If you want to get to the coal mine, you got to travel four miles down that haul road, take a left, go down. I understand that, but one of the problems I'm having with your argument is, even if we give you the fact that the apron feeder juts into the coal pile, if we say that the coal pile is in the coal processing plant because the haul road goes right up to the coal pile, does that mean then the haul road becomes part of the coal processing plant? And because the haul road touches the mine, then the mine becomes part of the coal processing plant. You see my logic that essentially we're bringing everything in because everything touches something else? I understand, Your Honor, and I don't think that we need to go down that road because the mine itself drew a line on this map of where they graded the area for these facilities. There's also schematics that show a specific line that they consider to be the end of the haul road, which is right where that line is drawn onto this picture. And so what I would go back to, however, is that what we're talking about is applying a clear regulation to the facts of the case. That's something that we stipulate in the district court should be done by a jury. Now, if what we're talking about now is whether or not a regulation is ambiguous, number one, we don't defer to a state agency because if the regulation is ambiguous, then that's going to affect national uniformity. That's something only the EPA can weigh in on. We're not looking at a deference issue. That was the mistake. We didn't determine ambiguity. The court basically short-circuited the trial process, short-circuited the fact, decided this on summary judgment. We quite frankly believe that summary judgment should be granted in our favor because just looking at this picture, it's clear that the coal pile is part of the coal plant. But even putting that aside, the district court granted summary judgment on this issue by imbuing the regulation with an ambiguity that it hadn't determined existed before it got into the analysis of secondary sources and deference. With that, your honors, I'm going to reserve the rest. Let me ask this question. You said that the regulation is not ambiguous. One of the first things you said. Are you referring to this definition of affected facilities under, in subpart Y? Is that the part that you that you would primarily point to as being unambiguous and that the district court made an error in finding an ambiguity? Well, your honor, I think there are several regulations. There's just the regulation stating that the provisions of the subpart apply to affected facilities and coal prep plants. The following are affected facilities, and this is what a coal prep plant is. It is made up of these. I think the fact that we don't know what regulation the district court is saying is ambiguous is the most important point here. I'm saying the applicable regulations that I just listed are not ambiguous. So you don't think the district court in this long opinion specified the regulations that the regulation or the part thereof that it thought was ambiguous? It didn't do an analysis and determine that any particular regulation was ambiguous. It implied that applicable regulations were ambiguous by talking about secondary sources first. How important, real quickly, just on that exact topic, how important is the open storage pile, the separate regulation dealing with open storage piles? Which my understanding was actually promulgated later than the affected facilities regulation. How important is that to your argument? The fact that open storage piles are now classified as affected? Yeah, and there's also a definition of open storage piles as well, I believe, in the in the later regulation that they have. And yes, your honor, it's defined because they included it in 2009 as an affected facility within a cold prep plant. The fact, and this goes back to the initial distinction I wanted to make, the fact that they've now included as an affected facility simply means that they know that this is an important source of emissions that needs to be separately regulated with a performance standard. However, even if it's not defined as an affected facility doesn't determine the question of whether or not you count those emissions toward the major source threshold for that facility or that source. I don't understand that as an answer to Judge Strass' question. Because affected facility is... He asked how important is the reg? How does it play into your analysis? Because whether or not it... Is it essential to you? I guess you say no, it's not essential. It's not essential. We can ignore it. It's essential to whether or not the coal storage pile is an affected facility. Now, the coal storage piles in general are affected facilities for coal prep plants. Whether this coal storage pile is an affected facility under NSPS subpart Y is the question here. That's a separate question from our primary claim which is whether or not you count the coal pile as part of the major source threshold determination. That is a question under the PSD program, not under NSPS subpart Y. It's a separate question. I would direct your attention to the two questions answered in the 1998 guidance because I think it makes that distinction clearer. Thank you, Your Honors. Now back to Judge Shepard's question. On pages 23 and 24 of your brief, main brief, you... You... subpart Y relevant definitions, 40 CFR 60.251 E, F, and M. Are those the regulations you're referring to when you say the regulations are unambiguous? Those are some of the regulations. There are... Where are the rest of them? How do we read your brief to find the rest of them? It's the regulations, the part of subpart Y that says the provisions of this subpart apply to affected facilities, 40 CFR 250A and 250D, which says the performance standards are applicable in addition to the ones you just referenced. And 60.251M was the one I was referring to, which defines the open storage piles. Correct, Your Honor. And the ones you were just... What were you just reading from? Your brief or just... I was reading from my outline, quite frankly, but... I can't... I can't... You've got a separate argument section about unambiguity, that the regs are unambiguous. And we're trying to find out what... We're trying to clarify what the argument is, and you just keep making it less clear. 60.250A and D, and the ones you listed, are unambiguous. 60.25... What is it? A and D. 60.251D, E, F, M. Thank you. Your Honor. Thank you, Your Honor. Mr. Ubersack. Good morning. May it please the Court. My name is Jeff Ubersacks, and I represent the Coyote Creek Mining Company, which constructed this mine pursuant to a minor permit that was validly issued by North Dakota, exercising the primary responsibility that was delegated to it by the United States to implement and enforce the Clean Air Act. Now, to issue that permit, North Dakota properly concluded that the mine's raw coal pile is not in the coal preparation and processing plant. Now, the problem I'm having, just to jump, and I hate to interrupt your opening, but it gets back to the point that the apron feeder goes pretty far into the coal pile. And then you look at the regulations, and I'm not talking about the guidance. The regulations say that coal piles can be affected facilities and recognizes that a simple coal pile can be a facility, and so I don't understand how the apron feeder can be in the production facility or in the processing facility, but the coal pile, which touches it and actually is used to operate the apron feeder, is not. That doesn't make sense to me. Well, it's undisputed, of course, that the apron feeder touches or sticks out into the pile, but that doesn't have the effect of moving the entire coal pile into the coal preparation plant, which you really have to do here in order to create any disputed material question of fact about the emissions. Well, let me ask you this. I'm going to ask it a slightly different way. Sure. The regs unambiguously, and maybe I'll ask this question first, the regs unambiguously say coal piles can be affected facilities, right? Absolutely. And they can be part of the coal processing plant in certain circumstances. They can be. So if they are not, if the coal pile is not part in the coal processing plant here, when would they be? When it touches all, I mean, because this is a situation in which it touches the things that are in the facility. Well, there are circumstances in which piles of raw coal exist inside coal preparation and processing plants. There's actually a document in the record from the EPA that gives examples of prep plants and the very first example. And this is in the joint appendix at page 86. It talks about piles of processed coal inside a plant. And the key distinction here is piles outside and piles inside the plant. And the parties have always agreed that the dispositive question here is whether this storage pile is in the plant or not. Is it subject to subpart Y or not? So your argument would be if it's in that building on the picture, there's a big coal pile, then it would be in the processing plant. That would be a totally different case. But if it touches all the machinery outside the plant, it's not in the processing plant. Even though, under your definition, the apron feeder is not in the processing plant either. It's not in the building. Well, the apron feeder, well, no, the apron feeder, there's no dispute that it is. Yeah, but it's not in the building. That's the definition you just gave me. Well, no, I meant, well, it's in the boundaries. And the question is, is it inside the limits or boundaries? And EPA has specifically defined what those boundaries are. And, again, the operative word is, under the subpart Y regulation, is, is this in the plant or not? Otherwise, it's not an effective facility. It's not regulated under subpart Y. So EPA has told us, look, in order to determine where the plant starts, you look to the first hopper. The first hopper is the limit. But you're getting to the guidance. I'm just, I'm reading the regulations. I don't want to, we'll get to the guidance later. I'm sure we'll have a big discussion about that. But you're telling me that the coal pile can't, isn't inside the facility because it's not in the four corners of the building. And my problem is, is neither is the apron feeder. So why are we treating the apron feeder any differently? Well, because it's part of the structure. It's part of the physical structure, the wall. It's connected to the wall. It goes, there's an opening in the wall. And that hopper protrudes from the wall. But it's one structure. And the limit or boundary is that the intake, that first hopper, which is the apron feeder. I mean, that's. And the apron feeder is connected to the building then in some way. It's directly connected, as you can see from the pictures in the record. And actually the pictures in the summary judgment decision, page 20 and 24. It's directly connected to that wall, which physically separates the processing plant from the pile. And so, if that addresses your question. Thank you. I'll move on. Counsel, you've used the term in the plant several times. But that phrase is not in the regulations, is it? It is. It's 60 CFR 60.250A. Right at the beginning of subpart Y, it says that subpart Y only applies to affected facilities that are in a coal preparation processing plant. So the key word is in. Not inside, but in, which we take to mean the same and we think is unambiguous. So is that the, when we dig down to the base question, is that it? What's in the plant? That's exactly the base question. And specifically, is the entire coal pile in the plant? I mean, experts are agreed here that unless you count fugitive emissions from the entire coal pile or the haul road, and specifically wind erosion from the entire pile, then the appellants can't possibly carry their burden of showing that the potential to emit is 250 or more. I mean, their own expert has said that all the other activities from after the haul road, everything else from driving trucks out of the pile, dumping the coal from the trucks all the way through to the conveyor, that's all less than 250 tons per year. The only way there's a material dispute effect here about the potential to emit is if you bring the entire raw coal pile into the plant, and then you add the fugitive emissions from wind erosion from that whole pile. Is part of the pile, though, in the plant, in the sense that anything sitting on top of the apron feeder? Because you say the opposite, that the only way it happens is if the whole coal pile is. I'm just wondering whether you can see what part of it is. That wouldn't create a material dispute. Right, because it wouldn't get above 250. It wouldn't get close. I'm just curious as to what your position on that is. On whether the drop to the – On whether part of it, the part that's being pulled into the apron feeder directly connected, whether that part of it would be part of the coal processing plant or in the coal processing plant. Well, once it touches the apron feeder, falls onto the apron feeder, it is. So that's the line, okay. That's the line. So, again, as I said before, we have authoritative guidance, clear guidance from EPA. Started in 1998, then again 2003 and 2008 – or 2009, rather. And EPA specifically told us where the coal prep plant begins. It's at the first hopper. And so there's no question what the first hopper is, right? We actually – and this is not something that we're being imaginative about or creative. We have the manufacturer itself of this piece of equipment saying that material is loaded into a hopper at the intake end, and it's held in this hopper. Now, the district court said that that was ambiguous. He said if you look at the guidance, what the hopper is is actually ambiguous. Does it refer to the apron feeder? Does it refer to something else? And so I guess that kind of brings us to the question of whether we should defer to North Dakota. And what's your answer to that? Absolutely. What deference should we apply? Well, I guess I would say it's not ambiguous. I mean, we have – it couldn't be clearer that this is a hopper. But to the extent it's ambiguous, if there is room for reasonable disagreement, then, yes, you should defer to North Dakota because this is peculiarly within its delegated authority, its expertise, its experience. So absolutely. What level of deference? Should it be skid more, hour? What do you exactly look? More than hour? I think it's different from hour because this is not a pure abstract legal interpretation. What's the difference between, in this context, deference and arbitrary capricious standard of review? Well, I think the most directly applicable case is, well, from this court, would be Comfort Lake, which basically says that – No, I'm talking about just as a legal proposition. As a legal – The trial court was understandably probably correctly critical of the department for not putting this out for notice and comment. And then you'd have had a front-end challenge on their interpretation, perhaps. And that would have gone to review probably in state court, ultimately the U.S. Supreme Court. And the standard review would have been arbitrary and capricious. Yeah. They didn't – the plaintiffs didn't go that route, claimed it was because they didn't get the opportunity to get it with proper notice. So they bring what is basically a collateral attack on the state agency's decision-making. Right. Well, I don't understand why this question of deference – why isn't it just arbitrary and capricious standard of review as though it had gone up, as though we were reviewing the agency's – to the extent the agency's decision is relevant? Well, I think the standard is essentially the same as arbitrary and capricious. I don't see much difference. Yeah, that's what – I think that one of the cases we cited, maybe it's the Minn Kota case, maybe the Grand Canyon case, but the court made essentially that comment that, you know, it's very essentially the same as arbitrary and capricious. But the way that court articulated it was, you know, as long as what the state did is within its authority and reasonable and not inconsistent with federal law or guidance, then there should be deference. And as this court recognized in Comfort Lake, as long as North Dakota was exercising its primary responsibility and did not do something that conflicts with federal law, then it is entitled to considerable deference. Now, on the guidance, I think it's also important to note, and somewhat surprisingly, that the trial court didn't really focus much on the second guidance, the 2003 guidance, where EPA specifically addressed the situation here. What happens if you have a regulated NSPS emissions unit, like a coal preparation and processing plant, and that's inside an emissions unit that is not regulated under the New Source Performance Standards, like a mine? Specifically, EPA was talking about mines. And what they said is, in that situation, which is our situation here, you count the fugitive emissions only from the preparation and processing plant. So that's key. And we have to determine what are the exact boundaries of the Subpart Y facility here and count those fugitive emissions. Again, the open storage pile isn't part of the Subpart Y regulated facility because it's not in the plant. Do we need to rely on the regulations? I mean, there's a lot of overlap. You've got the potential hour deference to the regulations. You've got arbitrary and gracious review to your decision. In your view, are the regulations themselves unambiguous? You just disagree with the interpretation advanced by the other side? Yes, they are unambiguous. I mean, they are unambiguous. The word in is unambiguous. It's straightforward. But we have all kinds of layers of EPA interpretation that support our position on this. So North Dakota did the right thing when it put the coal pile into FUG-2, which was not FUG-1, the plant regulated by Subpart Y. And just briefly, I guess, in the time I have to address the arguments that the appellants are making, they're really saying that, well, this pile is, and then they say in their briefs, that it's in immediate proximity to the plant. But that's not the test here. Next to is not the same as in. And the Third Circuit in the Starr Enterprise case specifically rejected this kind of adjacency test. And this Court should do the same. How would you distinguish from the Starr Enterprise's case? I realize that was a completely different subpart, but similar regulatory scheme. It's a different subpart, but I think that its reasoning is directly on point here. There the question was, is a gas turbine in a refinery? And the Court said, well, this is a question of the physical location, and you can't look at, it's not just, is it adjacent to it? It's not, is it kind of integral to it? Does it have a function that's important to it? No. Is it in? Here it's not in. There it wasn't in. That same testifies here. Second argument is, in the briefs, is that the pile is on the same pad as the plant. Pad is a landscaping concept, a landscaping feature. It is not a legal concept that has any significance under the Clean Air Act. Third argument is that the pile is not located at the mine face. This is one of their arguments based on the language of the rule. And if it's not located at the mine face, they say, it must be part of the preparation plan. But EPA has rejected that argument because they know that a haul road is not located at the mine face either, right? It goes on for miles away from the mine face, and yet EPA has specifically addressed that and said fugitive emissions from the haul roads don't count. Why? Because they are between the active mining area and the first hopper of the preparation plan. That's what they said in 2009. Our intent, they said, is not to cover any operations unless they're on the premises of the preparation plan. If it's somewhere between the mine face and that first hopper, it doesn't count. I see that I've used my time up. Are there any other questions that I can address? Thank you. Thank you. Does Ron have any sometime? He does not. I'll give you two minutes for a bottle. Thank you, Your Honor. I think that the agreement alone that the regulations are unambiguous is as far as we need to go here, and what I was saying earlier is that when we start talking about deference, we start talking about secondary sources, those are tools we use to interpret ambiguous regulations. Those tools don't have a place here. What we're doing here is applying what we agree are unambiguous regulations to a fact pattern. That's something we do at trial. That was done here on summary judgment. The thing I'm struggling with and is not so much the interpretive part of it, it's the decision that was made by the agency here, the state agency. Did they make a factual determination that it's in, or did they make a legal determination that it's in? Because under one sense, if it's sort of a factual dispute, it becomes arbitrary and capricious. If this is about the interpretation of the regulations, we're in a different sort of place, a different box. And so I want to know your response to that, because I think the outcome of the case could come out differently depending on how you deal with that question. Unfortunately, my honest answer is that I don't know what the agency did, and I think that's one of the main problems with asking those questions. What I think the agency needs to do, what I think that we need to do, is apply unambiguous regulations to a fact pattern. What I glean from the record, quite frankly, is that they had the sense from an email from the mine that we don't believe that NSPS subpart Y applies, and so they arrived at a categorical exclusion of coal piles from NSPS subpart Y coal plants, which I think, if that's the decision, is clearly a wrong decision. Yeah, but they're saying something else today. I realize that this is, you know, they're saying that a coal pile just needs to be in the four walls of the facility. And if it was in the apron feeder, it would be in the facility. So they're making what appears to be not a categorical exclusion, but they're making a factual determination. And to the extent it's a factual determination, we should have a trial, but I would just point out that they're trying to draw a line between a place where the facilities are overlapping each other rather than drawing a line around the facilities. Thank you, counsel. The case has been thoroughly and briefed and well argued, and we'll take it under advisement.